RESOLUCIÓN
Examinado el recurso de certiorari, después de haber considerado lo expresado por la Procuradora General en su "Escrito para mostrar causa” y lo expresado por el peticio-nario Nelson Negrón Rivera en su "Moción aclaratoria y breve réplica al escrito para mostrar causa”, se provee “no ha lugar” al recurso.
Lo acordó el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Asociado Señor Martínez Torres emi-tió un voto de conformidad. El Juez Asociado Señor Rivera García emitió un voto particular de conformidad, al cual se unió la Jueza Asociada Señora Pabón Charneco. La Jueza Asociada Señora Fiol Matta emitió un voto particular disi-dente, al cual se unió el Juez Presidente Señor Hernández Denton. El Juez Asociado Señor Estrella Martínez emitió un voto disidente, al cual se unieron el Juez Presidente *272 Señor Hernández Denton y el Juez Asociado Señor Kol-thoff Caraballo.
(.Fdo.) Aida Ileana Oquendo Graulau

Secretaria del Tribunal Supremo

Voto de conformidad emitido por el Juez Asociado Señor Martínez Torres.
Para decidir si acogemos este recurso hemos analizado el Art. 308 del Código Penal de 2004 (33 L.P.R.A. sec. 4935). En específico, auscultamos si la cláusula de reserva de ese artículo contiene una excepción en lo relativo a la imposición de la pena. Como el Art. 308, id., no hace dis-tinción en lo referente a la pena, y que su historial legisla-tivo demuestra su alcance verdadero, estoy conforme con el resultado alcanzado por este Tribunal al denegar la expe-dición del auto de certiorari.
I
Por hechos ocurridos el 13 de abril de 2004, el Sr. Nelson Negrón Rivera fue acusado por el delito de posesión de sustancias controladas con intención de distribuirlas. Art. 401(a)(2) de la Ley Núm. 109 de 4 de junio de 1980, cono-cida como Ley de Sustancias Controladas de Puerto Rico, 24 L.P.R.A. sec. 2401(a)(2). Además, se le imputó reinciden-cia habitual porque contaba con dos convicciones anteriores.
El 22 de diciembre de 2006, el Tribunal de Primera Ins-tancia sentenció al señor Negrón Rivera según el Código Penal de 1974 y lo encontró reincidente habitual al amparo del Art. 62 de ese Código, 33 L.P.R.A. sec. 3302. Como re-sultado, se le impuso la pena de cárcel con separación per-manente de la sociedad.
*273 II
El Art. 308 del Código Penal de 2004, supra, establece:
La conducta realizada con anterioridad a la vigencia de este Código en violación a las disposiciones del Código Penal aquí derogado o de cualquier otra ley especial de carácter penal se regirá por las leyes vigentes al momento del hecho.
Si este Código suprime algún delito no deberá iniciarse el encausamiento, las acciones en trámite deberán sobreseerse, y las sentencias condenatorias deberán declararse nulas y libe-rar a la persona. El cambio de nombre de un delito no significa que el tipo delictivo ha quedado suprimido.
La opiniones disidentes de los compañeros Jueces Aso-ciados Señora Fiol Matta y Señor Estrella Martínez sostie-nen que la cláusula de reserva del Art. 308, id., se refiere solamente a la tipicidad de la conducta y que no abarca la imposición de la pena. De esta forma, aplicarían el princi-pio de favorabilidad recogido en el Art. 9 del Código Penal, 33 L.P.R.A. sec. 4637, para concluir que en este caso pro-cede aplicar la reincidencia al amparo del Código Penal de 2004. Sin embargo, un análisis del trámite legislativo de-muestra que la Asamblea Legislativa, luego de recibir va-rias ponencias al respecto, hizo un cambio al Art. 308, supra. En particular, eliminó una oración que precisa-mente recogía la conclusión a la que llegan los compañeros.
El P. del S. Núm. 2302 de 12 de mayo de 2003, 14ta Asamblea Legislativa, 5ta Sesión Ordinaria, pág. 122, es-tablecía en su Art. 308:
La conducta realizada con anterioridad a la vigencia de este Código en violación a las disposiciones del Código Penal aquí derogado o de cualquier otra ley especial de carácter penal se regirá por las leyes vigentes al momento del hecho. Sin embargo, todas las disposiciones de este Código le serán aplica-bles si resultara de dicha aplicación un tratamiento más favorable al imputado o al sentenciado.
Si este Código suprime algún delito no deberá iniciarse el encausamiento, las acciones en trámite deberán sobreseerse, y las sentencias condenatorias deberán declararse nulas y libe- *274 rar a la persona. El cambio de nombre de un delito no significa que el tipo delictivo ha quedado suprimido. (Énfasis suplido.)
Como se aprecia, el P. del S. Núm. 2302, supra, contenía una oración que específicamente permitía la aplicación favorable del Código Penal de 2004 a la conducta delictiva cometida durante la vigencia del Código Penal de 1974. Incluso, el proyecto de ley hacía alusión a los términos im-putados y sentenciados. De esta forma, se establecía diáfa-namente que la aplicación retroactiva favorable incluía lo concerniente a la pena, tal como concluyen los hermanos Jueces Asociados Señora Fiol Matta y Señor Estrella Martínez.
Sin embargo, las críticas al Art. 308 propuesto no se hicieron esperar. Así pues, la entonces Secretaria de Justi-cia, hoy Juez Asociada de este Foro, Señora Rodríguez Ro-dríguez, presentó una ponencia el 3 de junio de 2003 en la que señaló:
El Artículo 308 establece que todas las disposiciones del Código Penal serán aplicables si resultan en un tratamiento más favorable al imputado o al sentenciado. Tal disposición no es conveniente pues crea el escenario para que se produzcan un sinnúmero de planteamientos de proporciones insospechadas que pudieran afectar detrimentalmente el proceso efectivo de las causas en curso y aún de las ya adjudicadas. La aplicación retroactiva de las disposiciones de este Código es un asunto de grave preocupación para m[í] como Secretaria y como principal funcionaría encargada de velar por el cumplimiento de las leyes. Por consiguiente, entiendo que se debe suprimir la segunda oración del primer párrafo del Art. 308, líneas 13 a 15, pág. 122 del proyecto. (Énfasis suplido.) http://www. ramajudicial.pr/CodigoPenal/acrobat/ 46-2003_0603-Departamento-de-Justicia.PDE (última visita, 18 de octubre de 2011.)
Esta parte de la ponencia demuestra sin ambages una preocupación genuina de parte de la entonces Secretaria de Justicia por las consecuencias prácticas que la aplica-ción retroactiva del Código Penal de 2004 habría tenido si se aprobaba sin enmiendas. Agraciadamente, la ponencia *275 citada no cayó en oídos sordos. De esta forma, el Informe de la Comisión de lo Jurídico de 22 de junio de 2003 sobre el P. del S. 2302, pág. 67, señaló lo siguiente:
Esta Comisión acoge la recomendación de la Secretaria de Justicia de que se enmiende el P. del S. 2302 para que en el Artículo 30[8] se elimine la oración “[s]in embargo, las dispo-siciones de este Código le serán aplicables si resultara de dicha aplicación un tratamiento más favorable al imputado o al sentenciado.” La intención del legislador es que este Código aplique a delitos cometidos con posterioridad a su vigencia, salvo en cuanto a lo dispuesto en el segundo párrafo de ese artículo para el caso en que este Código suprima algún delito. (Énfasis suplido.)
Esta expresión legislativa es contundente. Contrario a lo indicado por el Juez Asociado Señor Estrella Martínez en su voto disidente, en el informe de la Comisión de lo Jurídico sí se incluyó el término delito. Se esbozó que la intención legislativa era que el Código Penal de 2004 apli-cara a los delitos cometidos con posterioridad a su vigencia. De esta forma, se disipan todas las dudas en torno al al-cance del Art. 308, supra.
Más aún, la posición del hermano Juez Asociado Señor Estrella Martínez de aplicar el Código Penal de 2004 como la ley más benigna, no solo revive el lenguaje que el legis-lador eliminó, sino que borra de un plumazo el texto que el mismo legislador aprobó. Entonces, ¿dónde queda el primer párrafo del Art. 308, supra, que ordena que la con-ducta delictiva cometida cuando estaba vigente el Código Penal de 1974 se procese según las disposiciones de ese cuerpo de ley y no por las del Código Penal de 2004?
Además, conviene señalar que no es la primera vez que este Tribunal se enfrenta a esta controversia. Así, en Pueblo v. Padín Rodríguez, 169 D.P.R. 521 (2006), nos nega-mos igualmente a expedir un auto de certiorari, luego de dos mociones de reconsideración, en que la controversia era idéntica a la que hoy nos ocupa. Allí, la Jueza Asociada *276 Señora Fiol Matta emitió un voto disidente, al igual que en este caso.
III
Luego de analizar en su justa perspectiva el historial legislativo del Art. 308 del Código Penal de 2004, supra, resulta forzoso concluir que este no contiene excepciones en lo referente a la imposición de la pena. La intención legislativa plasmada en el informe de la Comisión de lo Jurídico del Senado y la propia redacción del Art. 308 no hace distinción entre la conducta, los elementos del delito y su pena.
Somos conscientes de que con posterioridad a nuestra opinión en Pueblo v. González, 165 D.P.R. 675 (2005), se presentó el P. de la C. 2076 de 10 de octubre de 2005, que pretendía enmendar el Art. 308, supra. Sabemos que el proyecto no se aprobó. Ahora bien, es necesario dejar claro que a la hora de estudiar la intención legislativa en una ley, como el Código Penal, es necesario brindarle gran de-ferencia al historial legislativo de la medida que se aprobó, no de la que se aprobó o derrotó después. “Es principio cardinal de interpretación estatutaria el que al lenguaje de la ley debe dársele el significado que valide el propósito que tuvo el legislador al aprobarla.” R.E. Bernier y J.A. Cuevas Segarra, Aprobación e interpretación de las leyes en Puerto Rico, 2da ed., San Juan, Pubs. J.T.S., 1987, pág. 245. La liberalidad en la interpretación no puede conducir-nos a infrigir la intención legislativa. Id., pág. 267. Claro está, hacemos esto sin violar el principio de legalidad con-sagrado en el Art. 2 del Código Penal, 33 L.P.R.A. sec. 4630.
En ocasiones es útil evaluar proyectos de ley posteriores que intentan aclarar algo que parece confuso en una ley. No obstante, nuestra labor es interpretar la intención le- *277 gislativa en las leyes aprobadas y no en los proyectos que nunca se convirtieron en ley.
En el caso que nos ocupa, el señor Negrón Rivera come-tió la conducta delictiva el 13 de abril de 2004 cuando to-davía estaba vigente el Código Penal de 1974. Así las cosas, lo correcto es que se le declarara reincidente habitual al amparo de ese Código, como ocurrió.
IV
Por los fundamentos expuestos, estoy conforme con la decisión de esteTribunal de denegar la expedición del auto de certiorari.
Voto particular de conformidad emitido por el Juez Aso-ciado Señor Rivera García, al cual se une la Jueza Aso-ciada señora Pabón Charneco.
La criminalidad es uno de los pro-blemas que más preocupa al Pueblo de Puerto Rico. El azote del crimen ha llegado [a] cobrar dimensión tal que ha restringido marcadamente el ámbito de libertad de la ciudadanía con grave menoscabo al disfrute de la vida a que tienen perfecto dere-cho todos los ciudadanos. Exposición de Motivos de la Ley Núm. 34-1998 Leyes de Puerto Rico 136.
Estoy conforme con la Resolución de este Tribunal, en el caso de autos, en la que denegó la expedición del recurso de certiorari presentado por el peticionario. Asimismo, difiero muy respetuosamente del disenso de la minoría por enten-der que su razonamiento es contrario al estado de derecho. Me veo impedido de avalar una visión de extremo libera-lismo judicial, cuya consecuencia sería extender el benefi- *278 ció de una pena más favorable a un delincuente habitual, vinculado al narcotráfico.
Esbozamos los antecedentes fácticos pertinentes al re-curso ante nuestra consideración.
I
El Ministerio Público presentó contra el Sr. Nelson Ne-grón Rivera una denuncia por infracción al Art. 401 de la Ley Núm. 4 de 23 de junio de 1971, según enmendada, conocida como Ley de Sustancias Controladas de Puerto Rico, 24 L.P.R.A. sec. 2401 et seq. (Ley de Sustancias Controladas). Se le imputó al peticionario haber realizado una transacción de venta de sustancias controladas a un agente encubierto el 13 de abril de 2004.
Luego de varios incidentes procesales y del acto de lec-tura de acusación, el Ministerio Fiscal alegó la reincidencia habitual del señor Negrón Rivera, ya que había sido con-victo y sentenciado en múltiples ocasiones previas. Las convicciones correspondían a siete delitos graves, en su mayoría asociados con la venta, distribución y posesión con la intención de distribuir sustancias controladas.
El juicio en su fondo se celebró el 8 de noviembre de 2006. Culminado el proceso judicial y aquilatada la prueba testifical y documental, el Tribunal de Primera Instancia declaró culpable al peticionario por el delito tipificado en el Art. 401 de la Ley de Sustancias Controladas, supra. Por su extenso historial delictivo, el foro de primera instancia lo declaró delincuente habitual y lo condenó a la pena de separación permanente de la sociedad, conforme lo dispo-nía el Art. 62(c) del Código Penal de 1974 (33 L.P.R.A. sec. 3302(c)), cuerpo legal vigente al momento de los hechos.
Insatisfecho con el dictamen, el 18 de enero de 2007, el señor Negrón Rivera presentó un recurso de apelación ante el Tribunal de Apelaciones. Sin embargo, el escrito de ape-lación fue notificado al Tribunal de Primera Instancia el 18 *279 de febrero de 2007, es decir, un mes después de haber inter-puesto el recurso de apelación. El señor Negrón Rivera jus-tificó su demora argumentando que inadvertidamente se le quedó la copia para el tribunal de instancia en su expediente.(1)
Por otra parte, en su recurso de apelación el señor Ne-grón Rivera aceptó ser reincidente. Empero, solicitó la apli-cación de las disposiciones sobre reincidencia de la Ley de Sustancias Controladas y no las establecidas en el Código Penal. También, argüyó que la pena de separación perma-nente de la sociedad infringía la cláusula constitucional contra castigos crueles e inusitados.
El foro apelativo intermedio, mediante una Sentencia de 18 de diciembre de 2009, confirmó la sentencia apelada. Determinó que el Art. 62 del Código Penal de 1974, supra, era la disposición aplicable, ya que de su expediente delic-tivo surgen otros delitos que no están asociados a infrac-ciones a la Ley de Sustancias Controladas, como era el de tentativa de recibo y transportación de bienes apropiados ilegalmente. Razonó que la norma de reincidencia en la Ley de Sustancias Controladas aplica con exclusividad cuando todos los delitos previos por los cuales se alegue la reincidencia son también delitos relacionados con las dro-gas ilícitas. Además, de acuerdo con los precedentes esta-blecidos en Pueblo v. Martínez Ríos, 109 D.P.R. 303, 306 (1979), Pueblo v. Reyes Morón, 123 D.P.R. 786, 797 (1989), y Rummel v. Estelle, 445 U.S. 263 (1980), coligió que no se violó la cláusula relativa a los castigos crueles e inusitados referida en el caso de autos.
*280 No conforme con el dictamen, el señor Negrón Rivera presentó una moción de reconsideración ante el foro apela-tivo intermedio. Ese foro, mediante Resolución de 23 de abril de 2010, declaró “no ha lugar” la solicitud de reconsideración.
Aún inconforme, el 1 de junio de 2010, el señor Negrón Rivera presentó un recurso de certiorari ante esta Curia. En su recurso, el peticionario reprodujo las mismas alega-ciones que presentó en su escrito de apelación ante el Tribunal de Apelaciones.
El 3 de diciembre de 2010, la mayoría de este Tribunal emitió una resolución mediante la cual declaró “no ha lu-gar” al auto de certiorari presentado por el señor Negrón Rivera. Igual dictamen se emitió en las mociones de recon-sideración que el peticionario presentó ante este Foro. El Juez Presidente Señor Hernández Denton disintió sin opi-nión escrita, la Jueza Asociada Señora Fiol Matta emitió un voto disidente, al igual que el Juez Asociado Señor Es-trella Martínez.
La opinión disidente acogió la teoría del señor Negrón Rivera. Esta aduce que la pena impuesta constituye un castigo cruel e inusitado. Además, la disidencia sostiene que no aplica el inciso (c) del Art. 62 del Código Penal de 1974, supra, por razón de que en Pueblo v. González, 165 D.P.R. 675 (2005), resolvimos que las limitaciones de la cláusula de reserva al principio de favorabilidad concer-nían solo a la conducta delictiva y no a las penas dispues-tas en el Código Penal actual. A base de esa interpretación arguye que, en relación con las penas, el principio de favo-rabilidad no está limitado por la cláusula de reserva, es decir, que a las conductas delictivas cometidas vigente el Código Penal de 1974 les aplican las penas del actual Có-digo Penal.
Ante esa desacertada interpretación del Derecho, me veo precisado a intervenir mediante este voto particular. Específicamente, en cuanto a la interacción entre la cláu- *281 sula de reserva con el principio de favorabilidad y la inter-pretación errónea de nuestros pronunciamientos emitidos en Pueblo v. González, supra.
Veamos los fundamentos jurídicos que sostienen nues-tro voto de conformidad.
II
A. El principio de favorabilidad en la ley penal, la herme-néutica y la cláusula de reserva
De ordinario, todos los hechos o las conductas criminales ocurridas a partir de la fecha de vigencia de una nueva ley serán procesados de acuerdo con sus disposiciones. Lo anterior obedece a que, de ordinario, las leyes tienen carácter prospectivo, a menos que la Asamblea Legislativa expresa-mente le imprima carácter retroactivo. Pueblo v. Pizarro Solis, 129, D.P.R. 911, 927 (1992); Pueblo v. Rexach Benitez, 130 D.P.R. 273, 301 (1992). En lo pertinente, el Art. 8 del actual Código Penal (33 L.P.R.A. sec. 4636) dispone que “[l]a ley penal aplica a hechos realizados durante su vigencia”.
Por otra parte, el Art. 9 del actual Código Penal contem-pla el principio de favorabilidad. Atales efectos, dispone que “la ley penal tiene efecto retroactivo en lo que favorezca a la persona imputada de delito”. 33 L.P.R.A. sec. 4637. Según tal principio, “[s]i durante el término en que la persona está cumpliendo la sentencia entra en vigor una ley más benigna en cuanto a la pena o a la medida de seguridad o al modo de ejecutarlas, se aplicará retroactivamente”. Id.
A diferencia de la prohibición de leyes ex post facto, el principio de favorabilidad tiene un rango meramente legal. No surge de la Constitución, sino que es puramente de ca-rácter estatuario. En consecuencia, se reconoce la potestad del legislador para establecer excepciones a ese principio, ordenando la aplicación de la ley vigente al momento de la comisión del hecho punible, aunque implique que la ley aplicada sea más desfavorable para el acusado que la ley *282 de origen posterior, vigente al momento de la condena. Por eso, recae en la pura discreción legislativa la aplicación prospectiva o retroactiva de una nueva ley penal en cuanto esta beneficie al acusado. “[L]a aplicación retroactiva de las leyes penales que favorezcan al acusado [queda] dentro de la prerrogativa total del legislador.” (Enfasis suprimido.) Pueblo v. González, supra, pág. 686.
Para reconocer el curso seguido por la autoridad legis-lativa, es necesario examinar la hermenéutica. Es doctrina arraigada que cuando el lenguaje de una ley es claro y la intención legislativa patente, los tribunales están obliga-dos a respetar la voluntad del legislador. Raimundi v. Productora, 162 D.P.R. 215 (2004). Para ser consecuentes con la intención del legislador, los principios de la hermenéu-tica penal establecen que los estatutos deben leerse en ar-monía con el resto del cuerpo legal. Así se evita incurrir en interpretaciones literales que conduzcan a resultados ab-surdos, no queridos por el legislador. Pueblo v. Ríos Dávila, 143 D.P.R. 687, 696 (1997).
Asimismo, es norma reiterada que “ ‘[p]ara interpretar correctamente una ley, debe buscarse la intención legisla-tiva, no en una frase aislada o en una de sus secciones, sino en el contexto de todo el estatuto, teniendo en cuenta el propósito perseguido por el legislador’ ”. Asoc. Fcias. v. Caribe Specialty et al. II, 179 D.P.R. 923, (2010). Véase Pueblo v. De Jesús, 70 D.P.R. 37, 42 (1949). Por consiguiente, los tribunales no pueden disponer lo que el legislador no in-tentó proveer, porque ello significaría invadir los poderes de la Asamblea Legislativa. Raimundi v. Productora, supra, citando & Alejandro Rivera v. E.L.A., 140 D.P.R. 538, 545 (1996). La exposición de motivos de la ley, los informes de las comisiones y los debates en el hemiciclo, además del texto de la ley son las fuentes de mayor importancia en la tarea de determinar el significado de un acto legislativo. Pérez v. Mun. de Lares, 155 D.P.R. 697, 706-707 (2001). *283 Véase, además, Rexach v. Ramírez, 162 D.P.R. 130, 148-149 (2004).
El actual Código Penal contiene en su Art. 308 (33 L.P.R.A. sec. 4935) una cláusula de reserva que afecta directamente el principio de favorabilidad estatuido en el Art. 9 del referido Código, supra, el cual dispone específi-camente sobre su efecto retroactivo. Precisamente, en el ejercicio de su discreción, la Asamblea Legislativa dispuso en el Art. 308, lo siguiente:
La conducta realizada con anterioridad a la vigencia de este Código en violación a las disposiciones del Código Penal aquí derogado o de cualquier otra ley especial de carácter penal se regirá por las leyes vigentes al momento del hecho.
Si este Código suprime algún delito no deberá iniciarse el encauzamiento, las acciones en trámite deberán sobreseerse, y las sentencias condenatorias deberán declararse nulas y libe-rar a la persona. El cambio de nombre de un delito no significa que el tipo delictivo ha quedado suprimido. (Enfasis nuestro.) 33 L.P.R.A. sec. 4935.
Como puede notarse, el primer párrafo de este Art. 308, supra, establece claramente que la conducta realizada antes de la vigencia del Código se regirá por la ley penal vi-gente al momento de realizarse tal conducta; es decir, al consumarse el acto considerado delictivo. Esta es una dis-posición especial encaminada a que no se aplique retroac-tivamente el nuevo Código Penal a favor del acusado o de los convictos. Adviértase, pues, que la Asamblea Legisla-tiva pudo haber establecido que la ley aplicable era la que regía al momento en que el acusado fue juzgado y sentenciado. No obstante, estableció claramente que la fe-cha de la comisión del delito fijaría la ley sustantiva que se aplicaría.
Ahora bien, vale aclarar que el legislador estableció una excepción en el segundo párrafo del referido artículo. Si el Código suprimió completamente un delito, no habrá res-ponsabilidad penal aunque la conducta hubiera ocurrido *284 antes de la vigencia del Código. Esto obedece a principios elementales de política criminal sobre la nueva valoración social de determinadas conductas. Véase Pueblo v. O’Neill, 165 D.P.R. 370 (2005).
Por otro lado, del historial legislativo del Art. 308 del vigente Código Penal, supra, surge de manera diáfana que el legislador no deseó darle un alcance retroactivo, como lo considera la opinión disidente. Originalmente, el lenguaje del Art. 308 del actual Código Penal indicaba:
La conducta realizada con anterioridad a la vigencia de este Código en violación a las disposiciones del Código Penal aquí derogado o de cualquier otra ley especial de carácter penal se regirá por las leyes vigentes al momento del hecho. Sin embargo, todas las disposiciones de este Código le serán aplica-bles si resultara de dicha aplicación un tratamiento más favorable al imputado o al sentenciado.
Si este Código suprime algún delito no deberá iniciarse el encausamiento, las acciones en trámite deberán sobreseerse, y las sentencias condenatorias deberán declararse nulas y libe-rar a la persona. (Énfasis suplido.) P. del S. 2302 de 12 de mayo de 2003, 14ta Asamblea Legislativa, 5ta Sesión Ordina-ria, pág. 122.
Posteriormente, el legislador decidió eliminar la oración enfatizada del texto del Art. 308, supra. Así, no dispuso que el cuerpo legal del vigente Código Penal tuviese algún efecto retroactivo, con excepción como antes señalamos, de lo dispuesto en el segundo párrafo de esa normativa. Evi-dentemente, la intención legislativa fue que las disposicio-nes del referido Art. 9 del actual Código Penal solo se apli-carán prospectivamente a partir de su vigencia, lo cual incluso se constata en el Informe sobre el Proyecto del Se-nado 2302 de la Comisión de lo Jurídico de 22 de junio de 2003, pág. 67, que expresa sobre dicha cláusula como si-gue:
Esta Comisión acoge la recomendación de la Secretaria de Justicia de que se enmiende el P. del S. 2302 para que en el Art. 309 [finalmente el Art. 308 del Código aprobado] se eli-mine la oración “sin embargo, las disposiciones de este Código *285 le serán aplicables si le resultara de dicha aplicación un tra-tamiento más favorable al imputado o al sentenciado”. La in-tención del legislador es que este Código aplique a conductas ilícitas cometidas con posterioridad a su vigencia, salvo en cuanto a lo dispuesto en el segundo párrafo de ese artículo para el caso en que este Código suprima algún delito. (Énfasis nuestro.)
Indudablemente, se eliminó del artículo una disposición que hubiera activado en toda su extensión las disposiciones del Art. 9, supra —el principio de favorabilidad— para que los acusados y convictos se beneficien de las disposiciones más benignas del actual Código. Por tal razón, las penas del actual Código tampoco aplican de manera retroactiva.
Como señaláramos, para sostener la aplicación del Art. 82 del actual Código Penal, 33 L.P.R.A. sec. 4710, en lugar del Art. 61 del Código Penal de 1974 (33 L.P.R.A. ant. sec. 3301), en tanto y en cuanto el nuevo Código contiene un articulado que aplicado resulta en una pena más benigna que el anterior Código, la opinión disidente hace una dis-tinción en la interpretación del caso Pueblo v. González, supra. No estamos de acuerdo con la interpretación de la opinión disidente. No respaldamos la bifurcación que pre-tende hacer la disidencia de la acción delictiva y de la pena a imponerse por el delito cometido.
La decisión en Pueblo v. González, supra, no hace la distinción que pretende hacer la opinión disidente entre el “tipo delictivo” y la “pena” impuesta. La decisión en Pueblo v. González, supra, va dirigida tanto a la acción delictiva como a la pena que ha de imponerse. Al interpretar el texto del primer párrafo del Art. 308 del Código Penal de 2004, esa decisión señala:
Resolvemos, en consecuencia, que la cláusula de reserva contenida en el ... Art. 308 del Código Penal de 2004, impide que un acusado por hechos delictivos cometidos diarante la vigencia del derogado Código Penal de 1974, pueda invocar —vía el Art. 4, ante— las disposiciones del nuevo Código Penal. En virtud de ello, a todos los hechos cometidos bajo la vigencia y en violación de las disposiciones del Código Penal *286 1974 les aplicará el referido cuerpo legal en su totalidad. Ello así, ya que la clara intención legislativa es a los efectos de que el nuevo Código Penal tenga, únicamente, aplicación prospectiva. (Énfasis en el original suprimido y énfasis nuestro.) Pueblo v. González, supra, pág. 708.
Además, si al derogar el antiguo Código Penal la Legis-latura deseaba impedir el procesamiento criminal, inclu-yendo las penas al amparo de ese cuerpo legal, estaba en la obligación de así manifestarlo expresamente. Es evidente que no lo hicieron, ya que sus intenciones eran otras: darle una aplicación prospectiva a esa ley penal y no crear impe-dimento alguno para procesar criminalmente según el anterior Código Penal, a quienes delinquieron durante su vigencia. Véanse: Pueblo v. González, supra; Pueblo v. Álvarez Torres, 127 D.P.R. 830 (1991).
Ciertamente la intención legislativa, referente al citado Art. 308, es clara y patente. Como Tribunal, estamos obli-gados a respetar la voluntad legislativa. Raimundi v. Productora, supra. Por ende, sería indebido, como Tribunal, que dispusiéramos algo que el legislador no intentó pro-veer, porque ello significaría una invasión en los poderes conferidos a la Asamblea Legislativa. Véase Raimundi v. Productora, supra.
En virtud de lo enunciado, es claro que en el caso de autos no aplican las disposiciones del Art. 82 del actual Código Penal de 2004 supra, a las sentencias dictadas por hechos cometidos con anterioridad a su vigencia. Esto surge de manera evidente del propio historial legislativo del Art. 308 del Código Penal, supra. Como reseñamos, la Asamblea Legislativa decidió eliminar de la cláusula de reserva del actual Código Penal la oración que hacía refe-rencia a la aplicación retroactiva de las disposiciones del Código si les resultaban más favorables al imputado o sentenciado. Con ello, queda fuera toda posibilidad de que se aplicara retroactivamente el principio de favorabilidad. Otra interpretación de este precepto obviaría el propósito legislativo.
*287 Las disposiciones del Art. 9 del actual Código Penal, supra, en tanto recoge el principio de favorabilidad a que apunta el señor Negrón Rivera en su recurso, queda modi-ficada en su aplicación por la cláusula de reserva dispuesta en el Art. 308, supra, del referido Código. Por consiguiente, la aplicación del Art. 9 es prospectiva; no le aplica retroac-tivamente al señor Negrón Rivera.
B. El castigo cruel e inusitado y la reincidencia habitual
El Artículo 62(c) del Código Penal de 1974, supra, esta-blecía que “[e]n caso de reincidencia habitual el convicto será declarado por el tribunal delincuente habitual y será sentenciado a separación permanente de la sociedad me-diante reclusión perpetua”.
En Pueblo v. Rodríguez Cabrera, 156 D.P.R. 742, 748 (2002), explicamos el alcance de la figura de la “reinciden-cia habitual”:
... la reincidencia habitual se configura cuando se comete cualquiera de los delitos mencionados en el precepto tras antes haber sido convicto y sentenciado por dos o más delitos graves cometidos en tiempos diversos e independientes irnos de otros”. Así, dicha figura presupone unos delitos bases, los cuales han de haber sido cometidos en tiempos diversos e in-dependientes unos de otros. Por ello, lo determinante para propósitos de la reincidencia habitual es que dichos delitos bases sean producto de episodios criminales distintos y sepa-rados, sin que sea imprescindible que sean producto de sen-tencias emitidas en fechas distintas. (Citas omitidas.)
Por otra parte, la función adjudicativa de la Rama Judicial persigue evitar la imposición de castigos crueles e inusitados, según prohíbe el Art. II, Sec. 12 de la Constitu-ción de Puerto Rico, L.P.R.A., Tomo 1. Pueblo v. Pérez Zayas, 116 D.P.R. 197, 201 (1985). Esta prohibición constitucional protege, entre otras, contra la imposición de penas desproporcionadas y arbitrarias. Brunet Justiniano v. Gobernador, 130 D.P.R. 248, 272 (1992). No obstante, se ha resuelto reiteradamente que si la pena impuesta está com- *288 prendida en los parámetros establecidos en la ley, su impo-sición no constituye un castigo cruel e inusitado. Pueblo v. Ruiz Bosch, 127 D.P.R. 762, 790 (1991).
Sobre si el castigo por reincidencia habitual es un cas-tigo cruel e inusitado, hemos expresado que la “imposición de una penalidad adicional para quien ha sido convicto en más de dos ocasiones era parte de las prerrogativas cons-titucionales de la Asamblea Legislativa”, Pueblo v. Montero Luciano, 169 D.P.R. 360, 379 (2006), y que ello “no viola la cláusula contra castigos crueles e inusitados”. Pueblo v. Reyes Morón, 123 D.P.R. 786, 797 (1989).
En Pueblo v. Reyes Morón, supra, puntualizamos que aunque la pena que establece el estatuto relativo a la de-lincuencia habitual parezca altamente punitiva, el Tribunal Supremo de Estados Unidos validó en el caso Rummell v. Estelle, supra, la imposición al convicto de una penalidad de cadena perpetua, según el estatuto de Texas, similar al nuestro. De esta forma reconocimos la validez de la pena que se establece en nuestra jurisdicción para el reincidente habitual.
La reincidencia habitual se conceptualizó para penali-zar a aquellos delincuentes que han hecho de la comisión reiterada de actos delictivos, violentos o no, su forma de vida. Basta con que la conducta delictiva sea de naturaleza grave y persistente. Véase Pueblo v. Rodríguez Cabrera, 156 D.P.R. 742 (2002).
En el caso de autos, el señor Negrón Rivera aduce que no se le debe condenar como un delincuente habitual. No le asiste la razón. El señor Negrón Rivera ha sido convicto y sentenciado por la comisión de varios delitos graves, rela-cionados con la venta y posesión de sustancias controladas. Más aún, vigente el anterior Código Penal volvió a delin-quir infringiendo otra vez la Ley de Sustancias Controladas. Se le encontró culpable y conforme a las dis-posiciones de la ley penal vigente al momento de los he-chos, se le imputó ser un delincuente habitual. Esos hechos *289 son incontrovertibles. Igualmente, a la fecha cuando el se-ñor Negrón Rivera cometió sus crímenes, el citado Art. 62(c) disponía que la persona convicta y sentenciada por dos o más delitos cometidos en tiempos diversos e indepen-dientes unos de otros, y cometiese posteriormente delitos tales como violaciones a la Ley de Sustancias Controladas sería sentenciado como delincuente habitual. En atención a ello, el juez del foro primario sentenció al señor Negrón Rivera conforme al estado de derecho correcto.
Aclaramos, que aquellos convictos y sentenciados por el antiguo Art. 62(c) no fueron condenados por una disposi-ción que infringe la cláusula constitucional contra castigos crueles e inusitados. La derogación de una ley o alguna de sus disposiciones no significa que haya algún vicio de in-constitucionalidad en la normativa derogada. La condena al señor Negrón Rivera es legítima y producto de sus pro-pios actos.
III
El señor Negrón Rivera no es un primer ofensor o un adicto a las sustancias controladas que necesite un trata-miento para su enfermedad, como pretende señalar la opi-nión disidente. Más bien, es quien inescrupulosamente vende la droga a los adictos; delito grave que ha cometido en infinidad de ocasiones. Recalcamos que la venta de es-tupefacientes arropa la isla. Día tras día observamos por los medios de difusión cuántos jóvenes, niños inocentes y buenos ciudadanos mueren como consecuencia de la guerra sin cuartel por el control de los llamados “puntos de drogas”. De ninguna manera este asunto debe tratarse li-vianamente y con guantes de seda, como si se tratara de una conducta insignificante.
Es evidente que el largo historial delictivo del señor Ne-grón Rivera revela que este ha hecho del crimen y del nar-cotráfico su forma de vida. En más de siete ocasiones ha *290 sido convicto de delitos graves y no ha tratado de rehabilitarse. El inciso (c) del Art. 62 del Código Penal de 1974, supra, igual al inciso (c) del Art. 81 del Código Penal vigente, 33 L.P.R.A. sec. 4709, tienen el objetivo de prote-ger a nuestra sociedad de esta clase de delincuentes, que por sus acciones recurrentes muestran un claro rechazo a la rehabilitación y un total menosprecio a la vida y a la seguridad de nuestro Pueblo.
Por los fundamentos que preceden, estamos conformes con la Resolución emitida por el Tribunal mediante la cual se deniega expedir el auto de certiorari.
Voto particular disidente emitido por la
Jueza Asociada Señora Fiol Matta,
al cual se une el Juez Presidente Señor Hernández Denton.
El 13 de abril de 2004, el señor Negrón Rivera participó en una venta de siete bolsitas de cocaína a un agente encubierto. El Ministerio Público le imputó haber cometido el delito grave de posesión con intención de distribuir sus-tancias controladas, tipificado en el Artículo 401 de la Ley de Sustancias Controladas de Puerto Rico (Ley de Sustan-cias Controladas).(1) En la acusación, además, se le imputó reincidencia por haber sido sentenciado en dos ocasiones anteriores, una porseis cargos de posesión de narcóticos según la Ley de Sustancias Controladas y otra bajo el Có-digo Penal, por tentativa de recibo y transportación de bie-nes apropiados ilegalmente.(2) Posteriormente, el Tribunal *291 de Primera Instancia autorizó que se especificara que se trataba de reincidencia habitual.(3)
El juicio comenzó el 24 de agosto de 2006. Ese día, se presentó toda la prueba y se ordenó el traslado de los ex-pedientes de los casos anteriores por los que se alegaba la reincidencia.(4) El Tribunal recibió los expedientes para la vista del 8 de noviembre de 2006. El acusado aceptó que los expedientes eran suyos y se le declaró culpable.(5) El 22 de diciembre de 2006, la defensa renunció al informe presen-tencia y el Tribunal declaró delincuente habitual a Negrón Rivera. Lo sentenció a separación permanente de la socie-dad mediante reclusión perpetua en una cárcel de máxima seguridad, según dictaba el Código Penal de 1974 para per-sonas convictas por dos o más delitos graves independien-tes que reincidieran cometiendo una de las violaciones es-pecificadas, entre las cuales se incluía el artículo 401 de la Ley de Sustancias Controladas.(6)
Negrón Rivera apeló el 19 de enero de 2007. Alegó que el foro de instancia erró al imponer la pena de separación permanente de la sociedad en vez de la reclusión por treinta y cinco años dispuesta para reincidencia en la Ley de Sustancias Controladas. Además, expresó que la pena impuesta viola la prohibición constitucional de castigos crueles e inusitados por no ser proporcional a los delitos cometidos.(7) El Tribunal de Apelaciones concluyó que fue *292 correcta la sentencia de reincidencia según el Código Penal de 1974, porque no todas las convicciones previas eran por violación a la Ley de Sustancias Controladas. El Tribunal entendió que eso excluía la aplicación de la disposición de reincidencia de dicha ley, de acuerdo con Pueblo v. Ramos Rivas, 171 D.P.R. 826 (2007). Asimismo, determinó que la disposición de reincidencia aplicable fue determinada por prerrogativa legislativa, por lo que no debía calificarse como un castigo cruel e inusitado.(8) Uno de los jueces del panel apelativo disintió, pues entendió que aplicaba la reinciden-cia al amparo de la Ley de Sustancias Controladas, ya que el antecedente de tentativa de transportación de bienes hur-tados según el Código Penal estaba relacionado con la nece-sidad de Negrón Rivera de conseguir dinero para satisfacer su adicción a drogas. Además, explicó que el castigo im-puesto no guarda proporción con los delitos cometidos, por lo que no debía aplicarse automáticamente sin estudiar las cir-cunstancias específicas que la Legislatura no tuvo ante su consideración. (9) El Tribunal de Apelaciones también denegó una solicitud de reconsideración.(10)
El 1 de junio de 2010, Negrón Rivera recurrió ante este Tribunal. Nuevamente, uno de los errores que planteó fue *293 que la pena de separación permanente de la sociedad es excesiva.(11) El 3 de diciembre de 2010, denegamos su soli-citud de certiorari, (12) También denegamos una primera moción de reconsideración, el 4 de febrero de 2011.(13) Una vez más, el peticionario nos pidió que modificáramos la condena impuesta y argumentó que, al momento de ser sentenciado, ya la Legislatura había atenuado la pena por reincidencia habitual, mediante la eliminación de la pena de separación permanente en el Código Penal de 2004, por lo que ningún ciudadano podía ser condenado a pasar el resto de su vida encarcelado.(14) Luego de evaluar su se-gunda solicitud de reconsideración, el 4 de marzo de 2011 ordenamos a la Procuradora General mostrar causa por la cual no debíamos modificar la pena por reincidencia habitual impuesta al peticionario.(15)
La Procuradora presentó su oposición el 2 de mayo de 2011. En ésta reitera todos sus argumentos en cuanto a los errores sobre los que el peticionario solicitó revisión originalmente. En cuanto a la posibilidad de aplicar la pena de reincidencia habitual más benigna que establece el Código Penal de 2004, en lugar de la del Código Penal de 1974, sólo menciona que el peticionario lo alegó de forma muy escueta, pero no provee razones para no emplearla.(16) *294 Por su parte, el peticionario presentó su réplica el 12 de mayo de 2011, en la que insistió en que, cuando lo senten-ciaron, la valoración de la pena por reincidencia habitual ya había cambiado. Tras estudiar los argumentos de am-bas partes, una mayoría de los jueces y las juezas de este Tribunal ha decidido no expedir el auto. Respetuosamente, disiento.
El principio de favorabilidad establece que las leyes pe-nales se aplican de forma retroactiva en lo que beneficien a las personas imputadas de delito. Ello implica que, cuando la ley vigente al cometerse el delito y la vigente al impo-nerse la sentencia son distintas, siempre se aplica el esta-tuto más benigno para el acusado(17) Incluso, si la persona ya está cumpliendo la sentencia y entra en vigor una ley con una pena o un modo de ejecutarla que es menos severa que aquella bajo la cual se le sentenció, se le debe aplicar la más favorecedora(18) Por ser un principio general, esta regla beneficia a las personas acusadas o convictas de todo tipo de delitos, sin distinción alguna. De esta forma, nues-tro ordenamiento permite, como excepción a las normas generales de que la ley penal aplicable es la que estaba vigente al cometerse el delito y de la irretroactividad de la ley nueva, que las personas acusadas o convictas se pue-dan beneficiar de leyes más benignas promulgadas en tiempo posterior a los hechos punibles(19)
*295 El fundamento del principio de favorabilidad en nuestro Derecho Penal, según explica el profesor Luis Ernesto Chiesa, es que sería irracional y arbitrario imponer una pena que al momento de la sentencia se considera inade-cuada, porque las expresiones legislativas más recientes manifiestan que cierto castigo es excesivo para la gravedad del hecho. En otras palabras, si la valoración jurídica de la conducta ha cambiado de modo que se han atenuado sus consecuencias, lo justo es aplicar esa nueva visión a los hechos cometidos antes del cambio, pues no tiene sentido que los ciudadanos sigan padeciendo los efectos de leyes que, en la actualidad, se entienden demasiado rigurosas. (20)
Por otro lado, según el Artículo 308 del Código Penal de 2004, la conducta antijurídica que se haya realizado antes de la vigencia del Código de 2004 se rige por la ley penal que estuviese vigente al momento de los hechos.(21) Esta cláusula de reserva parcial pretende que los actos punibles cometidos bajo el Código de 1974 derogado o las leyes pe-nales especiales aplicables cuando se cometió la conducta, que no hayan sido suprimidos por el Código de 2004, sean juzgados según la tipificación en vigor al tiempo en que ocurrieron.(22) A base de ello, en Pueblo v. González, 165 D.P.R. 675, 705 (2005), indicamos que la Legislatura deci-dió mantener la aplicabilidad del Código de 1974 para juz-gar los delitos cometidos durante su vigencia.
No obstante, vale aclarar que, en ese caso, nos limita-mos a estudiar el Artículo 308 en cuanto a la tipificación de delitos y no lo evaluamos en el ámbito de las consecuencias *296 de la aplicación de la ley penal, es decir, de las penas. En Pueblo v. González, determinamos que el asesinato estatu-tario tipificado en el Código Penal de 1974 no fue supri-mido en el Código de 2004, y que, de acuerdo con la cláu-sula de reserva del Código de 2004, procedía juzgar al acusado según el delito tipificado en el Código de 1974, que estaba vigente al momento de los hechos delictivos. Aun-que nos expresamos en términos generales sobre la aplica-ción retroactiva de la ley penal más benigna y las cláusulas de reserva como límites al principio de favorabilidad, el análisis estuvo centrado en el efecto de la cláusula de re-serva del Código Penal de 2004 sobre la conducta que se considera delictiva.
En efecto, debemos distinguir entre la punibilidad y la penalidad al analizar el axioma de aplicar la ley penal más benigna en conjunto con la cláusula de reserva. El análisis de las sanciones por la comisión de la conducta punible tiene que ser distinto al que se refiere a los elementos constituti-vos del delito o de los supuestos de hechos que deseamos prevenir. La razón es evidente: cada uno de estos componen-tes de la norma penal considera factores diferentes(23)
Si leemos detenidamente la cláusula de reserva del Có-digo Penal de 2004, podemos notar que está totalmente dirigida a la tipicidad y no menciona las penas. El Artículo 308 enuncia:
La conducta realizada con anterioridad a la vigencia de este Código en violación a las disposiciones del Código Penal aquí derogado [1974] o de cualquier otra ley de carácter penal se regirá por las leyes vigentes al momento del hecho.
Si este Código suprime algún delito, no deberá iniciarse el encauzamiento, las acciones en trámite deberán sobreseerse y las sentencias condenatorias deberán declararse nulas y libe-rar a la persona. El cambio de nombre de un delito no significa *297 que el tipo delictivo ha quedado suprimido. (Énfasis suplido.(24)
Esta redacción se distingue de la que se usó en la cláu-sula de reserva del Código de 1974. Ésta incluía expresa-mente las sanciones entre los elementos que debían aten-derse según el Código Penal anterior, al referirse al castigo del hecho cometido, en los términos siguientes: “La pro-mulgación de este Código [1974] no constituye impedi-mento para acusar o perseguir y castigar un hecho ya co-metido en violación a las disposiciones del Código Penal aquí derogado [1937] o de cualquier otra ley especial de carácter penal.” (Énfasis suplido.)(25)
Distinto al Código de 1974, el de 2004 permite la aplica-ción retroactiva de las penas y medidas de seguridad más favorables. Por eso, podemos razonar que la intención legis-lativa al aprobar el Código actual fue que se juzgaran los delitos cometidos bajo el Código anterior según las disposi-ciones de ese cuerpo, pero que se aplicaran las penas más benignas del nuevo Código para evitar un desfase entre las sentencias y la valorización social de las conductas al presente(26)
El profesor Antonio Bascuñán, en un estudio detallado sobre el desarrollo del principio de favorabilidad en Puerto Rico, explica que este Tribunal, al interpretar las cláusulas de reserva de modo que la consecuencia para el acusado sea razonable, se ha basado en la necesidad de que las penas impuestas sean cónsonas con la valoración que les asigna la Legislatura en el momento actual(27) Igualmente, el autor *298 señala que la jurisprudencia norteamericana muestra des-contento con concebir las cláusulas de reserva como manda-tos genéricos y absolutos.(28) Indica que, dado que la formu-lación de las cláusulas de reserva suele ser formal y abstracta, su aplicación irrestricta puede llevar al “absurdo político-criminal de tener que imponer una pena aunque al momento de la condena la ley haya expresado abiertamente su falta de necesidad”.(29)
Cabe recordar, según explicamos en Pueblo v. González, supra, que la interpretación de las cláusulas de reserva del Código Penal de 1974 en nuestra jurisprudencia fue conflictiva.(30) Hubo casos en los que aplicamos la ley penal más favorable, aunque fuera, según señala Bascuñán, “en abierta infracción del tenor literal de las cláusulas de reserva”.(31) La explicación, según este autor, era que en esos casos “la razonabilidad político-criminal se encon-traba del campo contrario a dichas cláusulas: lo razonable era evitar el exceso”.(32) Pero, más allá de las consideracio-nes de justicia y razonabilidad que se encontraran presen-tes en esos casos, debemos tener en cuenta un detalle im-portante: el Código de 1974 disponía que el principio de favorabilidad aplicaría solo prospectivamente.(33) Ese man- *299 dato legislativo fue el que causó las aparentes contradiccio-nes en los casos que se discuten en Pueblo v. González.(34) El Código de 2004 no contiene una disposición similar.
Más aún, debemos resaltar que, independientemente de la interpretación que se hiciera de la cláusula de reserva que prohibía la aplicación retroactiva del principio de favo-rabilidad, éste se aplicó de la misma manera en todos los casos citados: “lo decisivo al determinar la aplicación de la ley era la fecha en que fue dictada la sentencia del tribunal de instancia.”(35) Así, en Pueblo v. Caballero Rodríguez, este Tribunal declaró que “[ajunque los hechos y el juicio tuvieron lugar durante la vigencia del anterior Código Penal, la sentencia se dictó el 4 de febrero de 1975, estando ya en vigor el presente Código Penal”, (énfasis suplido(36) y analizó las instrucciones al jurado a la luz de la disposición más favorable del Código de 1974. Asimismo, en Pueblo v. Rosso Vázquez, el Tribunal aclaró que no reduciría la pena según las disposiciones más benignas del nuevo cuerpo de ley, porque el principio de favorabilidad aplicaba con carác-ter prospectivo y la sentencia se impuso antes de que en-trara en vigor el Código Penal de 1974.(37) Este desarrollo *300 implica que lo decisivo para determinar si el acusado puede beneficiarse de una ley más favorable al ser senten-ciado no es la fecha en que se cometieron los hechos, sino la fecha en que se dicta la sentencia.
En el presente caso, los hechos se cometieron en abril de 2004, cuando todavía estaba vigente el Código Penal de 1974, por lo que se juzgó al acusado según los delitos tipi-ficados en ese Código.(38) No obstante, la sentencia se dictó en diciembre de 2006, cuando ya regía el Código Penal de 2004, por lo que la pena se debía fijar según lo establecido en esa legislación, de ser ésta más benigna. Sin embargo, al acusado se le impuso incorrectamente la pena dispuesta por el Código de 1974, que es más severa que la del Código de 2004 que se le debía aplicar.
En su análisis sobre la concepción de la pena por rein-cidencia habitual en ambos cuerpos de ley, la profesora Dora Nevares-Muñiz explica que la reincidencia habitual según el Código de 1974 era tan rigurosa que violaba el principio de proporcionalidad dictado por la cláusula cons-titucional contra castigos crueles e inusitados, pues conlle-vaba prisión perpetua y prohibía participar en programas de rehabilitación así como cualificar para libertad bajo palabra. (39) El Código de 2004, en lugar de ordenar la re- *301 elusion permanente del reincidente, le impone una con-dena de noventa y nueve años, igual que a los delitos graves de primer grado. (40) La persona así sentenciada tiene acceso a programas de rehabilitación y puede ser conside-rada para libertad bajo palabra.(41)
La Ley 316 de 2004, que enmendó la Ley Orgánica de la Junta de Libertad Bajo Palabra de 1974 para atemperarla al Código Penal de 2004, dispuso que cualquier persona con-victa que se haya declarado reincidente habitual puede ser considerada para libertad bajo palabra al cumplir veinti-cinco años naturales de su sentencia, beneficio del que an-teriormente estaban excluidos los reincidentes habituales.(42) Asimismo, según la Ley de Mandato Consti-tucional de Rehabilitación de 2004, el reincidente habitual que cualifique para libertad bajo palabra podrá ser evaluado con el fin de determinar si está capacitado para convivir libremente en la sociedad sin que ello manifieste peligrosi-dad y, si el Departamento de Corrección certifica su rehabi-litación, el tribunal podrá considerar la posibilidad de dar por cumplida la pena restante.(43) El Artículo 104 del Código Penal de 2004 también provee para la certificación *302 de rehabilitación del recluso.(44) Estas diferencias se deben a que, con la reforma del Código Penal en el 2004, se buscó atemperar las penas para que respondieran a la severidad de los delitos y no constituyeran castigos perpetuos.(45)
Por lo tanto, procedía corregir la sentencia dictada en este caso para modificar la pena según el Código Penal de 2004.(46) De esa manera, la sanción impuesta corresponde-ría a la valoración legislativa actual de la consecuencia ju-rídica de la reincidencia habitual y a nuestra política cons-titucional de promover la rehabilitación y la resocialización de los confinados.(47) Así también, se propendería a que la pena guarde mayor proporcionalidad con los delitos cometidos. (48)
El resultado de la aplicación lógica del principio de fa-vorabilidad, en conjunción con la cláusula de reserva par-cial del Código Penal de 2004 y con el fin de rehabilitación que recogen nuestra Constitución, nuestras leyes y nues-tra jurisprudencia, no es ni remotamente la impunidad. El señor Negrón Rivera cumpliría una pena de noventa y nueve años naturales por haber mantenido una conducta delictiva durante varios años. La diferencia al sentenciarlo según el Código de 2004 vigente es que, cuando haya cum-plido veinticinco años naturales de su condena, tendrá la oportunidad de solicitar salir de la cárcel con libertad bajo palabra. Esa opción, que no se le otorgará automática-mente sino que se le podría brindar después de evaluar si todavía representa un peligro para la sociedad, es la que *303 puede motivarlo a superar su adicción y a aprovechar el tiempo de su encarcelación para desarrollar alguna habili-dad que le permita ser productivo cuando regrese a la libre comunidad. Si le negamos esa oportunidad, nada de lo que haga en la prisión tendrá propósito. ¿Qué incentivo para rehabilitarse va a tener esta persona? ¿Qué gana el país con mantener encerrado por el resto de su vida, en una prisión de máxima seguridad, a expensas del erario, a un joven que cayó en el vicio de las drogas?
La pena de separación permanente de la sociedad que se le impuso al señor Negrón Rivera es, a todas luces, excesiva. No sólo es contraria a las disposiciones legislati-vas vigentes, sino que derrota nuestra política pública de permitir y promover la rehabilitación. No puedo estar de acuerdo.
Al señor Negrón Rivera, y a las personas acusadas en su misma posición, solamente les quedará la esperanza de que la Asamblea Legislativa aclare el alcance del Artículo 308 del Código Penal de 2004. Sólo así se podrá hacer valer la prohibición de penas desproporcionadas a los delitos co-metidos que estipula nuestra Constitución y se le dará efi-cacia al principio de favorabilidad que impera en los siste-mas penalistas modernos, como esperamos que sea el de Puerto Rico.

 Apéndice del Recurso de apelación, pág. 379. El inciso (a) de la Regla 24 del Reglamento del Tribunal de Apelaciones, 4 L.RR.A. Ap. XXII-B, establece, como re-quisito de cumplimiento estricto, que la notificación al tribunal de instancia de la interposición de un recurso de apelación se deberá efectuar en un periodo máximo de cuarenta y ocho horas. Un tribunal solo tiene discreción para prorrogar un término de cumplimiento estricto cuando se acredite la existencia de justa causa; de lo con-trario carece de jurisdicción para expedir el recurso. García Ramis v. Serrallés, 171 D.P.R. 250 (2007); Lugo v. Suárez, 165 D.P.R. 729(2005).

 Art. 401(a)(2) de la Ley de Sustancias Controladas de Puerto Rico, 24 L.P.R.A. sec. 2401(a)(2). Véase Denuncia presentada el 11 de mayo de 2004, Apéndice del Certiorari, pág. 431.

 La parte de la acusación sobre la reincidencia dispone: “Alega además el fiscal la reincidencia del acusado Nelson Negrón Rivera, el cual ha sido convicto y sentenciado por este Honorable Tribunal en los casos JPD1999G0631 — por tent, art. 168, JSC19940262, JSC1994G0263, JSC1994G0278, JSC1994G0279, JSC1994G0280, JSC1994G0281 por sustancias controladas. Sentencia final y firme.” *291 Acusación presentada el 4 de enero de 2006, Apéndice del Certiorari, pág. 410. El delito de tentativa de recibo y transportación de bienes apropiados ilegalmente por el que fue sentenciado a un año de cárcel en el 2000 se encontraba en el Artículo 168 del Código Penal de 1974 (33 L.P.R.A. ant. sec. 4274), mientras que los cargos por vio-lación a la Ley de Sustancias Controladas se referían a que se declaró culpable por posesión de drogas según el Artículo 404 (24 L.P.R.A. sec. 2404) en 1994 y fue sen-tenciado a cuatro años de reclusión en 1995.

 Acta de 16 de marzo de 2006, Apéndice del Certiorari, pág. 403.

 Acta de 24 de agosto de 2006, Apéndice del Certiorari, págs. 393-394.

 Acta de 8 de noviembre de 2006, Apéndice del Certiorari, págs. 389(A)-389(C).

 Arts. 61-62, Código Penal de 1974, 33 L.P.R.A. ant. sees. 3301-3302. Acta de 22 de diciembre de 2006, Apéndice del Certiorari, pág. 388.

 Arts. 401 y 414 de la Ley de Sustancias Controladas, 24 L.P.R.A. sees. 2401 y 2413; Art. II, Sec. 12, Const. E.L.A., L.P.R.A., Tomo 1. Véanse: Escrito de Apelación de 18 *292 de enero de 2007, Apéndice del Certiorari, págs. 383-386; Alegato del Apelante ante el Tribunal de Apelaciones de 24 de septiembre de 2007, Apéndice del Certiorari, págs. 297-338. En sus escritos incluyó también como error que se le encontrara culpable, alegando insuficiencia de la prueba e identificación viciada.

 Pueblo v. Negrón Rivera, Sentencia KLAN20070088, 18 de diciembre de 2009, Apéndice del Certiorari, págs. 52-86. En Pueblo v. Ramos Rivas, 171 D.P.R. 826, 839 (2007), señalamos que “[l]a disposición de reincidencia del Art. 401 de la Ley de Sustancias Controladas, supra, aplica con exclusividad cuando todos los delitos previos por los cuales se alegue la reincidencia sean delitos graves según esta ley o cualquier ley de Estados Unidos relacionada con drogas narcóticas, desplazando, en virtud del principio de especialidad, las disposiciones de reincidencia del Código Penal”.

 Pueblo v. Negrón Rivera, Sentencia KLAN20070088, opinión disidente del juez González Vargas, 18 de diciembre de 2009, Apéndice del Certiorari, págs. 45-51. El juez entendió que aplicar la pena de separación permanente a este acusado vio-laba disposiciones constitucionales.

 Resolución de 23 de abril de 2010, Apéndice del Certiorari, págs. 12-16, con voto explicativo del juez González Vargas, Apéndice del Certiorari, págs. 1-11.

 Petición de certiorari ante el Tribunal Supremo, CC-10-463, págs. 40-43. En su escrito, incluyó otros tres errores que no atenderemos: insuficiencia de la prueba para rebatir la presunción de inocencia, violación al principio de especialidad al no aplicar la disposición de reincidencia de la Ley de Sustancias Controladas y falta de notificación adecuada de los cargos porque la reincidencia habitual no se alegó ex-presamente en el pliego acusatorio.

 El juez Hernández Denton y la jueza Fiol Matta hicieron constar que expedirían.

 El juez Hernández Denton y la jueza Fiol Matta hicieron constar que reconsiderarían.

 Segunda solicitud de reconsideración ante el Tribunal Supremo, 11 de fe-brero de 2011.

 Aunque el peticionario pidió reconsideración respecto a tres errores, emiti-mos una orden de mostrar causa únicamente respecto a la pena impuesta por rein-cidencia habitual.

 La mención se encuentra en la nota al calce 40, en la página 44 del Escrito para Mostrar Causa. La Procuradora indica que “si el peticionario interesa hacer *294 algún planteamiento en cuanto a su eventual elegibilidad para disfrutar de una libertad bajo palabra, a la luz del principio de favorabilidad, éste deberá plantearlo y discutirlo ante los foros pertinentes, en el momento apropiado”. Añade que esa con-troversia aún no ha madurado. Entendemos que, dado que el peticionario se encuen-tra cumpliendo su condena de reclusión, no hay razón para posponer la consideración de su planteamiento sobre la pena que debe cumplir.

 Art. 9(a) del Código Penal de 2004, 33 L.P.R.A. sec. 4637. El principio de favorabilidad también estaba codificado en el Código Penal de 1974, en el Artículo 4, 33 L.P.R.A. sec. 3004, derogado. Sobre la aplicación retroactiva véase, también, Pueblo v. Thompson Faberllé, 180 D.P.R. 497, 505 (2010).

 Art. 9(b) del Código Penal de 2004, 33 L.P.R.A. sec. 4637.

 D. Nevares-Muñiz, Derecho Penal Puertorriqueño, 5ta ed. rev., San Juan, Ed. Ins. para el Desarrollo del Derecho, 2005, págs. 100-108. El principio de favora-bilidad del derecho penal moderno ha sido adoptado como máxima en el derecho internacional y las disposiciones sobre los derechos humanos, pues favorece la reha- *295 bilitación de los transgresores. Véanse, por ejemplo-. Art. 15.1 del Pacto Internacional de Derechos Civiles y Políticos (ONU, Nueva York, 1966), http://www2.ohchr.org/ spanish/law/ccpr.htm; Art. 9 de la Convención Americana sobre Derechos Humanos (OEA, San José, 1969), http://www.oas.org/juridico/spanish/tratados/b-32.html.

 L.E. Chiesa Aponte, Derecho Penal Sustantivo, San Juan, Pubs. J.T.S., 2007, págs. 54-55. Véase, también, E.L. Chiesa Aponte y L.E. Chiesa Aponte, Derecho Penal, 73 Rev. Jur. U.P.R. 671, 689-695 (2004).

 Art. 308 del Código Penal de 2004, 33 L.P.R.A. sec. 4935.

 D. Nevares-Muñiz, Nuevo Código Penal de Puerto Rico, 2da ed., San Juan, Ed. Inst, para el Desarrollo del Derecho, 2005, págs. 10-12 y 397.

 Véase F. Muñoz Conde y M. García Arán, Derecho Penal: Parte General, 6ta ed., Valencia, Ed. Tirant Lo Blanch, 2004, págs. 33-65.

 33 L.P.R.A. sec. 4935.

 Art. 281 del Código Penal de 1974, 33 L.P.R.A. sec. 4625, derogado.

 Véase Voto disidente de la jueza Fiol Matta en Pueblo v. Padín Rodríguez, 169 D.P.R. 521, 521-531 (2006).

 A. Bascuñán Rodríguez, La aplicación de la ley penal más favorable, 69 Rev. Jur. U.P.R. 29, 65-66 (2000). Véase, además, la discusión de la profesora Nevares-Muñiz sobre casos en los que este Tribunal ha aplicado retroactivamente leyes pos-teriores más favorables a los acusados, independientemente de la cláusula de reserva. Nevares-Muñiz, Derecho Penal Puertorriqueño, op. cit., págs. 109-110, ci- *298 tando a Pueblo v. Caballero Rodríguez, 109 D.P.R. 126 (1979); Pueblo v. Malavé, 61 D.P.R. 403 (1943); Pueblo v. Otero, 61 D.P.R. 36 (1942).

 Bascuñán Rodríguez, supra, págs. 122-123.

 íd., pág. 56.

 Pueblo v. González, 165 D.P.R. 675, 702 (2005).

 Bascuñán Rodríguez, supra, pág. 69.

 íd. Véase, además, L. Rivera Román, El nuevo Código Penal: su vigencia y el debate entre la aplicación de la ley más benigna y las cláusulas de reserva, 40 Rev. Jur. U.I.P.R. 41 (2005). En ese artículo se repasan los argumentos respecto al prin-cipio de favorabilidad que se estuvieron presentando en los Tribunales de Primera Instancia durante los primeros meses de vigencia del Código Penal de 2004 y se concluye que se debe reconocer el valor jurídico de ese principio, pues “el Código Penal de 2004 culmina un desarrollo histórico que concede a un imputado toda ley más benigna, la aplica en su mayor amplitud y a favor de personas que han sido sentenciadas”. íd., pág. 67. Asimismo, señala que “el más simple sentido de justicia” y “una nueva valorativa social a una conducta criminal” deben ser fundamentos suficientes para aplicar una ley más benigna en todos los casos pendientes de adjudicación. íd.

 Art. 282 del Código Penal de 1974, 33 L.P.R.A. sec. 4626, derogado.

 Pueblo v. González, supra, págs. 699-702. Los casos discutidos son: Pueblo v. Villafañe, Contreras, 142 D.P.R. 839 (1997); Pueblo v. Moreno Morales I, 132 D.P.R. 261 (1992); Pueblo v. Caballero Rodríguez, supra; Pueblo v. Rosso Vázquez, 106 D.P.R. 905 (1977). En Pueblo v. Moreno Morales I, supra, la decisión de no aplicar una ley penal más benigna no se basó en el principio de favorabilidad y las cláusulas de reserva que establecía el Código Penal de 1974. Se debió a que la ley que el convicto pidió que se empleara establecía expresamente que sus disposiciones solo aplicarían a personas juzgadas por hechos cometidos a partir de la vigencia de esa ley y el delito se cometió antes. Pueblo v. Moreno Morales I, supra, pág. 289.

 Pueblo v. González Ramos, supra, pág. 701 esc. 21, resumiendo Pueblo v. Villafañe, Contreras, supra. En Pueblo v. Villafañe, Contreras, el juez Rebollo López emitió una opinión disidente en la cual criticó que se ignorara el principio de favo-rabilidad, con el efecto de castigar una conducta que ya no se consideraba delictiva, íd., págs. 849-857.

 Pueblo v. Caballero Rodríguez, supra, pág. 128.

 Pueblo v. Rosso Vázquez, supra, págs. 910-911. Además de considerar la fecha cuando se dictó la sentencia, el Tribunal indicó que “las circunstancias repug-nantes” del caso, en que un policía violó a una joven, “no nos mueven a intervenir con la penalidad”. Id., pág. 911. Mientras, cuatro de los ocho jueces que componían el Tribunal en ese momento disintieron de la decisión de no modificar la sentencia de acuerdo con el nuevo Código Penal para que la misma fuera de un máximo de vein- *300 ticinco años en lugar de ser una de hasta cincuenta años. Fundamentaron su disenso en la importancia de promover la rehabilitación de los confinados a través del sis-tema correccional y de poner en vigor el axioma de vanguardia que representa el principio de favorabilidad. Id., págs. 912-914.

 El Código Penal de 2004 comenzó a regir el 1 de mayo de 2005; Art. 314 del Código Penal de 2004, Ley Núm. 149-2004 (33 L.P.R.A. sec. 4938 n.). El propósito principal de la reforma del Código Penal fue revisar las penas que establecían el Código de 1974 y las leyes penales especiales. Exposición de Motivos del Código Penal de 2004 (2004 (Parte 1) Leyes de Puerto Rico 879-883).

 D. Nevares-Muñiz, Las penas en el nuevo Código Penal: a cinco años de su vigencia, 79 Rev. Jur. U.P.R. 1129, 1154-1155 (2010). Véase, además, D. Nevares-Muñiz, Evaluación del Modelo de Penas-Revisión del Código Penal, Comisión de lo Jurídico del Senado de Puerto Rico, 9 de abril de 2002, pág. 18, http:// www.ramajudicial.pr/CodigoPenal/acrobat/ 04-Evaluacion-del-Modelo-de-Penas.pdf. Sobre las teorías acerca de las penas por reincidencia habitual, véase, además, A. Von Hirsch, Doing Justice: The Choice of Punishments, New York, Ed. Hill and Wang, 1976, págs. 84-94. Este autor explica que, al imponer un castigo por ser reincidente, no sólo se debe considerar la cantidad de veces en que la persona delin-quió, sino también la seriedad de las ofensas cometidas.

 Art. 81(c) del Código Penal de 2004, 33 L.P.R.A. sec. 4709(c). Al igual que el Código de 1974, el de 2004 dispone el grado de reincidencia habitual cuando la persona ha sido convicta anteriormente por dos o más delitos graves independientes y comete otro delito grave en violación de las disposiciones enumeradas, que incluyen el Artículo 401 de la Ley de Sustancias Controladas. Las normas para la determina-ción de reincidencia según el Código de 2004 se encuentran en su Artículo 82, 33 L.P.R.A. sec. 4710.

 Véase R.N. Bell Bayrón, La significativa aportación al compromiso con la rehabilitación del sentenciado de la reforma penal de 2004 y de la Ley del Mandato Constitucional de Rehabilitación, 40 Rev. Jur. U.I.P.R. 1 (2005).

 Art. 3(a)(1) de la Ley Orgánica de la Junta de Libertad Bajo Palabra, Ley Núm. 118 de 22 de julio de 1974, según enmendada por la Ley Núm. 316-2004, 4 L.P.R.A. sec. 1503(a)(1). Para otros ejemplos sobre la exclusión de los delincuentes habituales de beneficios para su rehabilitación y reinserción en la sociedad según el Código Penal de 1974, véase Pueblo v. Pizarro Soils, 129 D.P.R. 911 (1992).

 Art. 7 de la Ley de Mandato Constitucional de Rehabilitación, Ley Núm. 377-2004, según enmendada por la Ley Núm. 165-2009, 4 L.P.R.A. sec. 1615. Véase, también, A. Sánchez Galindo, El derecho a la readaptación social, Buenos Aires, Ed. Depalma, 1983.

 Art. 104 del Código Penal de 2004, 33 L.P.R.A. sec. 4732. La rehabilitación del sentenciado es una de las causas de extinción de la pena. Art. 103 del Código Penal de 2004, 33 L.P.R.A. sec. 4731.

 Véase Nevares-Muñiz, Las penas en el nuevo Código Penal, supra, págs. 1131-1141 y 1160-1161. Véase, además, J. Cid Moliné, ¿Pena justa o pena útil?: el debate contemporáneo en doctrina penal española, Madrid, Pubs. Ministerio de Jus-ticia, 1994.

 Véase la Regla 213 de Procedimiento Criminal, 34 L.P.R.A. Ap. II.

 Art. VI, Sec. 19, Const. E.L.A., L.P.R.A., Tomo 1; Ley de Mandato Constitu-cional de Rehabilitación, 4 L.P.R.A. secs. 1611-1616; Art. 50 del Código Penal de 2004, 33 L.P.R.A. sec. 4678.

 Pueblo v. Pérez Zayas, 116 D.P.R. 197, 201-202 (1985).